KERSEY COATS, as Assignee, etc., Appellant, *v.* ROBERT W. DONNELL et al., Respondents.

A cashier of a bank has, as incident to his office, implied authority to borrow money for it and, in the absence of any statutory restraint, to secure the loan by pledge of its property or funds; and, as against third persons, the assumption of such authority by the cashier will conclude the bank.

A corporation, in the absence of statutory restrictions, has the right to prefer one creditor to another in the distribution of its property.

The provision of the Revised Statutes (1 R. S. 593, § 9), prohibiting preferences by insolvent corporations, does not apply to foreign corporations.

An oral agreement was made in the city of New York, June 10, 1878, between M., the cashier of the M. Bank, of Kansas City, and the firm of D. L. & Co., the correspondents in New York of said bank, to the effect that if said firm would accept certain drafts, amounting to $35,000, which had been previously drawn upon it for the accommodation of and negotiated by the bank, the latter would keep on deposit with the firm at all times until maturity of the drafts, a balance equal to the amount thereof, and that the drawees should have a lien on such balance as security, with the right to charge the account at any time with the acceptances, and appropriate to their payment so much of the deposits as should be necessary. D. L. & Co. were advised by the cashier that the bank was embarrassed, but that, with the assistance so obtained and other aid, it would be able to continue business. They accepted the drafts under the agreement, and the proceeds were shortly after deposited with them by the bank, and other deposits were made by it. Sight drafts were subsequently drawn by the bank, on D. L. & Co. in the ordinary course of business, and all presented prior to August 3, 1878, were paid. On July 27 said cashier wrote to D. L. & Co. that he apprehended a run on the

bank, and directed them to charge up the acceptances; the letter was received July 30, but not then acted upon. On August 3, the firm received a telegram from the cashier, announcing the failure of the bank. At that time the balance of the deposit account in favor of the bank was more than enough to pay the acceptances; these were immediately charged up to the bank. On the same day, but later, the bank made an assignment to plaintiff for the benefit of creditors. D. L. & Co. paid the drafts when they matured. At the time of the assignment there were outstanding unaccepted drafts drawn by the bank on D. L. & Co., amounting to about $40,000. In an action to recover the sum so appropriated by D. L. & Co. to meet the drafts, *held*, that the agreement was one the cashier had authority to make, both under his general authority, and by virtue of a by-law of the bank which gave him the charge and supervision of the bank, with power to make loans etc.; that the agreement was not invalid as against public policy ; and that it, with the subsequent transactions, was effectual to create a lien on the deposit, and authorized the appropriation.

Also *held*, that the agreement was not fraudulent as to the holders of the drafts drawn on D. L. & Co. after it was made.

The accepted drafts were without interest, and at the time of the appropriation their present value was $34,833. *Held*, that the right of the firm was not limited to this amount ; but that they had the right to charge against the account the face of the drafts and hold that amount to meet them when due.

(Argued October 25, 1883 ; decided November 27, 1883.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 24, 1881, which affirmed a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 16 J. & S. 46.)

This action was brought by plaintiff, as assignee of the Mastin Bank of Kansas City, Missouri, to recover an alleged balance to its credit at the time of the assignment of a deposit account with the firm of Donnel, Lawson & Co., of which firm defendants are the individual members.

The material facts are stated in the opinion.

*Leslie W. Russell* for appellant. An agreement that defendant should have a lien upon the floating balances would be against public policy, and beyond the power of the cashier to

make. (Laws of Missouri, Myers' Supplement to Wagner's Missouri Statutes, 394, chap. 122, § 21 ; 1 Wagner's Statutes, ed. of 1870, 280, § 2 ; *O'Shea* v. *Collier W. L. Co.*, 42 Mo. 397.) The arrangement between Lawson and Mastin was to be construed in the sense, and with the reservations understood by the parties. (*Barlow* v. *Scott*, 24 N. Y. 40.) The creation of a lien requires a subject *in esse* in the power of the grantor at the time the lien is created. (*Edgell* v. *Hart*, 5 Seld. 217 ; *Bank* v. *Hunt*, 11 Wall. 391 ; *Mittnacht* v. *Kelley*, 3 Abb. App. Dec. 301 ; *In re Aldrich*, 6 Benedict, 483 ; *Powers* v. *Freeman*, 2 Lans. 127 ; *Otis* v. *Sill*, 8 Barb. 102 ; *Smith* v. *Cooper*, 27 Hun, 565.) Even if the bank had the power to make such an agreement, the cashier certainly could not do it of his own volition. (*Hoyt* v. *Thompson*, 1 Seld. 320 ; *B'k of U. S.* v. *Dunn*, 6 Peters, 51 ; 1 Daniel on Neg. Inst. 322 ; *Elliot* v. *Abbott*, 12 N. H. 549 ; *Davies Co. Assn.* v. *Saylor*, 63 Mo. 24 ; 1 R. S. 591, § 8.) Parties negotiating an illegal contract are estopped from setting up the want of power to make such a contract. (*Delafield* v. *State*, 26 Wend. 192, 221 ; *Pratt* v. *Eaton*, 79 N. Y. 449 ; 25 Hun, 295 ; *Crocker* v. *Whitney*, 71 N. Y. 161 ; *B'k of Salina* v. *Alvord*, 31 id. 473.) The assignee, as trustee for creditors, including those for whom the fund of Donnell, Lawson & Co. was designed, has an equitable standing, which the bank would not have. (*Southard* v. *Benner*, 72 N. Y. 424, 427 ; Laws of 1858, chap. 314.) The laws of New York govern this transaction, except so far as by comity the courts recognize the decisions and statutes of Missouri. (*Edgerly* v. *Bush*, 81 N. Y. 199 ; *Faulkner* v. *Hart*, 82 id. 413 ; *Southern L. Ins. Co.* v. *Packer*, 17 id. 51, 53 ; *Curtis* v. *Leavitt*, 15 id. 9.) The letter of Mastin of July 25, or 27, which is unfortunately lost, did not confer the power to appropriate the general balance to the payment of the time drafts. (1 R. S. 591, § 9 [6th ed.] ; 2 id. 298 ; *Huxton* v. *Bishop*, 3 Wend. 13 ; *Robinson* v. *B'k of Attica*, 21 N. Y. 406 ; *Furniss* v. *Sherwood*, 3 Sandf. 521, 523 ; *Horcy* v. *Kerr*, 8 Bosw. 194.) The doctrine of set-off cannot be invoked as a defense or counter-claim. (2 R. S. [Edm.

ed.] 365, § 18 ; Code of Civil Proc., § 502 ; *Beckwith* v. *Union B'k*, 9 N. Y. 211.) Defendants having thrown themselves upon the equity side of the court, and having claimed to come within the privilege of equitable rules, allowing the set-off, their equity must be superior within well-defined rules to justify the exceptional case not provided by rules of law. (*Munger* v. *Alb. City B'k*, 85 N. Y. 580, 588 ; *Lindsley* v. *Jackson*, 2 Paige, 581 ; *Barber* v. *Spencer*, 11 id. 517 ; *Smith* v. *Felton*, 43 N. Y. 419 ; *Bradley* v. *Angell*, 3 id. 475 ; *Meyers* v. *Davis*, 22 id. 489 ; *Martin* v. *Kuntzmuller*, 37 id. 397 ; *Chance* v. *Isaacs*, 5 Paige, 592 ; *Union B'k* v. *Beckwith*, 9 N. Y. 211 ; *Keep* v. *Lord*, 2 Duer, 78.) The obtaining of funds by time drafts was simply a business transaction, which did not make the drafts accommodation drafts within the usual rule, even though the Mastin Bank was primarily liable to pay. (2 Greenleaf on Evidence, § 172 ; Chitty on Bills, 319, 328 ; *Bagnall* v. *Andrews*, 7 Bing. 217 ; *Farmers' B'k* v. *Rathbone*, 26 Vt. 19.) The precise reasoning which gives an equitable right of set-off as against equitable right of draft holders because legally the plaintiff represents simply the bank, and not their peculiar interest, is inconsistent and untenable. (*Westlake* v. *Bostwick*, 3 J. & S. 261 ; *Jordan* v. *N. S. and L. B'k*, 74 N. Y. 467.) The plaintiff has the right of standing in this court by the comity of the courts to recover upon a demand due him as assignee, and the courts of this State will assist him in closing up his trust, and thus protecting the creditors of the bank, among whom are citizens of our own State. (*N. J. Lombard B'k* v. *Thorpe*, 6 Cow. 46 ; *Runk* v. *St. John*, 29 Barb. 585 ; *Hoyt* v. *Thompson*, 1 Seld. 341 ; *Fenton* v. *Lumberman's B'k*, Clark, 286, marg. p.)

*Rastus S. Ransom* for respondents. Courts will take judicial notice of the powers and duties of a cashier, or of other bank officers. (26 How. 5, 6, 7.) As cashier, he may borrow money and indorse notes and so bind the bank. (19 N. Y. 156 ; 41 Barb. 586 ; 13 N. Y. 309 ; *Smith* v. *Felton*, 43 id. 419.) The bank, having had the benefit of the money obtained on the

acceptances, is thus estopped from objecting to the right of the cashier to make the contract by which it was obtained or received. (31 N. Y. 611 ; 32 id. 105 ; 7 id. 224, 227 ; Dunlap's Paley on Agency, 171, note *o*.) As between the defendants and the Mastin Bank, the defendants, although acceptors, were in fact sureties, and were entitled to security. (*B'k of Toronto* v. *Hunter*, 20 How. 292; *Pratt* v. *Foote*, 9 N. Y. 463 ; *S. C.*, 10 id. 600, 601.) A lien that a party would not otherwise have may be given by express agreement. (4 N. Y. 498, 501; *Hale* v. *Omaha Nat. B'k*, 49 id. 626; *McCafferty* v. *Wooden*, 65 id. 459 ; *Wisner* v. *Ocumpaugh*, 71 id. 113 ; 74 id.473.) Any property may be pledged or mortgaged, or a lien given on it, to secure a debt not due or upon a contingent liability. (*Reed* v. *Sands*, 37 Barb. 185 ; *Bliss* v. *Cottle*, 32 id. 322 ; *Griffin* v. *Marquardt*, 17 N. Y. 28 ; *Green* v. *Warwick*, 64 id. 220 ; *Cram* v. *Turner*, 67 id. 437 ; *Cutts* v. *Guild*, 57 id. 232, 233; *Blydenburgh* v. *Thayer*, 34 How. 88 ; *Ely* v. *McKnight*, 30 id. 97; 2 Parsons on Contracts, 277, 278 ; *Draper* v. *Trescott*, 29 Barb. 404 ; *McMahon* v. *Allen*, 12 Abb. 277; *Short* v. *Barry*, 3 Lans. 147; *Craig* v. *Hyde*, 24 How. 313 ; *Towle* v. *Jones*, 19 Abb. 449 ; 1 Robt. 87 ; *Heyward* v. *City of Buffalo*, 14 N. Y. 540; *Mann* v. *Fairchild*, 2 Keyes, 106; *Bradley* v. *Aldrich*, 40 N. Y. 504.) A contingent liability is a debt. (18 Wend. 375, 383, 384, 385, 398; 8 Cow. 406, 424.) Defendants, being acceptors, were primarily liable without protest or notice. (*Suydam* v. *Westfall*, 2 Denio, 209, 212, 216; *B'k of Toronto* v. *Hunter*, 20 How. 292.) It is not always necessary for a person who is liable to pay money for another, to first pay that money before enforcing payment to him by the person liable. (*Gilbert* v. *Wyman*, 1 N. Y. 550 ; *Bancroft* v. *Winspear*, 44 Barb. 209 ; *Rector of Trinity Church* v. *Higgins*, 48 N. Y. 532.) It is not necessary to invoke the doctrine of equitable set-off, as the defense is established by proof of the agreement giving the defendants a lien upon the deposits. (*Smith* v. *Felton*, 43 N. Y. 419 ; 41 Barb. 279, 283; 21 N. Y. 499; 37 Barb. 230; 74 N. Y. 473, 474; 59 id. 537, 538; *Bradley* v. *Angel*, 3 id.

475; *Myers* v. *Davis*, 22 id. 489; *Scheiffelin* v. *Hawkins*, 14 Abb. 116; *Martin* v. *Kunzmuller*, 37 N. Y. 396; 10 Bosw. 16; *Munger* v. *Albany C. N. B'k*, 85 N. Y. 580, 585; *Davidson* v. *Alfaro*, 80 id. 660.) The contract with the defendants was a New York contract, and the security given to them was given in New York, and the New York law governs. (Story on Conflict of Laws, §§ 242, 280; *Dickinson* v. *Edwards*, 77 N. Y. 458, 573, 575, 576; *Jewell* v. *Wright*, 30 id. 259; *Everett* v. *Vendryes*, 19 id. 436; *Bowen* v. *Newell*, 13 id. 290; *Ruckle* v. *Eckhart*, 3 id. 132; *Hyde* v. *Goodnow*, id. 266; 84 id. 367.)

Andrews, J. The right of the plaintiff to maintain this action, so far as respects the sum of $34,833.49 of the deposit standing to the credit of the Mastin Bank of Kansas City, Missouri, on the books of Donnell, Lawson & Co., on the morning of August 3, 1878, depends upon the force and validity of an oral agreement of June 10, 1878, made in the city of New York between John J. Mastin as cashier of the bank, and Donnell, Lawson & Co., taken in connection with the subsequent appropriation by Donnell, Lawson & Co., in execution of that agreement, and with the consent of the cashier, of sufficient of the funds of the Mastin Bank in their hands, to meet their outstanding acceptances. The agreement of June 10, 1878, as found by the referee, was in substance that if Donnell, Lawson & Co. would accept the four accommodation drafts of June 8, 1878, drawn upon them, which drafts had already been negotiated by the bank, but had not yet been presented to the drawees for acceptance, the Mastin Bank would keep on deposit with Donnell, Lawson & Co., in New York, at all times until their maturity, a sum or balance equal to the amount of the drafts, and that the drawees should have a lien thereon as security for their liability upon the acceptances, and should be kept informed of the condition of the bank, and have the right at any time to charge the account with the acceptances, and appropriate or apply the deposit, or so much thereof as might be necessary, to their payment. The cashier

of the bank represented to Donnell, Lawson & Co. at the interview of June 10, 1878, that the bank was in straits for money, but that with their assistance, through the acceptance of the drafts, and other aid which could be procured, the bank would be able to tide over its embarrassments, and continue its business. Donnell, Lawson & Co. accepted the drafts under the agreement of June 10, 1878. The proceeds were, within a day or two after they were accepted, deposited by the Mastin Bank with Donnell, Lawson & Co., who had for several years been the correspondent of the Mastin Bank in the city of New York, and the bank subsequently and prior to August 3, 1878, made other deposits with the firm. Subsequent to June 10, 1878, sight drafts in favor of customers, in the usual course of business, were drawn from time to time by the Mastin Bank upon Donnell, Lawson & Co., and such drafts as were presented prior to August 3, 1878, were paid by the drawees, and charged to the account of the bank. On the morning of that day the credit to the bank on the books of Donnell, Lawson & Co. was $50,459.68. The acceptances of Donnell, Lawson & Co. of $35,000 had not yet matured, and were held by third parties. They did not draw interest, and their value at that time was $34,833.49. The cashier of the Mastin Bank, on or about the 27th day of July, 1878, wrote to Donnell, Lawson & Co., in-. forming them that he apprehended a run on the bank, and directing them to charge up the acceptances to the bank. This letter was received by Donnell, Lawson & Co. on or about the 30th day of July, but they did not immediately act upon it. On the 3d of August they received a telegram from the cashier, announcing the failure of the bank, and immediately thereafter, on the same day, they charged the acceptances to the Mastin Bank, and subsequently, on their maturity, paid them to the holders.

The bank on the 3d of August, 1878, made a voluntary assignment of its property to the plaintiff for the benefit of its creditors. This assignment, though made on the same day, was executed after Donnell, Lawson & Co. had charged up the acceptances. There were at the time of the assignment out-

standing unaccepted drafts to the amount of about $40,000, drawn by the bank upon Donnell, Lawson & Co., which are still unpaid.

The appropriation by Donnell, Lawson & Co. on the 3d of August, 1878, of sufficient of the funds of the Mastin Bank in their hands, for the payment of their immature acceptances, was in precise conformity to the agreement of June 10, 1878, as found by the referee. It is claimed on behalf of the appellant that the agreement found, is inconsistent with the presumed intention of the parties, for the reason that as the drafts were negotiated to provide a fund to be deposited with Donnell, Lawson & Co., against which drafts might be drawn by the Mastin Bank, it could not have been contemplated that the fund so provided should be subject to appropriation by Donnell, Lawson & Co. to the payment of their acceptances, to the prejudice of the holders of drafts, for whose benefit the fund was provided. This claim leaves out of view the important fact that the drafts drawn on Donnell, Lawson & Co. had already been negotiated by the Mastin Bank before the agreement of June 10, 1878, was made, and the urgency of the situation so far as the Mastin Bank was concerned in respect to their acceptance, and also the further fact that so far as appears, it was no part of the arrangement between the Mastin Bank and Donnell, Lawson & Co. on the 10th of June, 1878, that the proceeds of the drafts should be deposited with them to meet subsequent drafts of the bank. The fact that the proceeds were subsequently deposited with the firm, or that the drafts were negotiated by the bank for the very purpose of obtaining funds, to be deposited with Donnell, Lawson & Co., subject to its drafts, does not affect the right of Donnell, Lawson & Co. to enforce the agreement of June 10, 1878, or authorize the interpolation of a term into the contract, inconsistent with the actual agreement.

The main controversy between the parties here turns upon the questions, *first*, whether the cashier of the Mastin Bank had authority to bind the bank by the agreement of June 10, 1878 ; *second*, whether that agreement, if authorized by the

bank, was invalid as contrary to public policy, or in its nature was ineffectual to create a lien upon the deposit according to its terms, and to justify the appropriation, even though at the time such appropriation was made, it was expressly authorized by the bank; and *third*, (if the agreement was for any reason invalid or ineffectual) whether the plaintiff, as the assignee of the bank, can repudiate the agreement without paying the drafts, or indemnifying Donnell, Lawson & Co. for the money expended in discharging their liability as acceptors.

There can, we apprehend, be no serious doubt of the propo sition that the agreement of June 10, 1878, was one which the cashier of the bank was authorized to make, *first*, as incident to his office of cashier, in the absence of any special authority to enter into the particular transaction, and *second*, by reason of the by-law of the bank defining the authority of the cashier, which declares that "he shall have the immediate charge and supervision of the bank; shall attend to the making of loans, discounts, and other active business transactions of the bank, exercising his own judgment as to all such matters, when not otherwise directed by the finance committee or board of direct ors." The drafts in question were drawn and negotiated for the purpose of procuring money for the use of the bank and to enable it to carry on its legitimate and usual business. The cashier of a bank is its executive officer, and it is well settled that as incident to his office he has authority, implied from his official designation as cashier, to borrow money for, and to bind the bank for its repayment, and the assumption of such authority by the cashier, will conclude the bank as against third persons who have no notice of his want of authority in the particular transaction, and deal with him upon the basis of its existence. (*Curtis* v. *Leavitt*, 15 N. Y. 9; *Barnes* v. *Ontario Bank*, 19 id. 152.) The negotiation of the drafts in this case by the cashier was within his authority. The power to borrow being admitted, the power to secure the loan by pledge of the property or funds of the bank, (in the absence of any statutory restraint,) in the ordinary course of business, would seem to be a necessary inference from the primary power, and this is recog-

nized in the cases to which we have referred.   The exigency of the bank when the agreement in question was made, rendered it of the utmost importance to its interests to prevent the protest of the drafts, and the authority of the cashier to make the agreement of June 10, 1878, giving to Donnell, Lawson & Co. a lien upon any deposit in their hands, for their security, if at all doubtful irrespective of the by-law, was ample under the comprehensive grant of authority thereby conferred.

The contention that the agreement of June 10, 1878, was ineffectual to create a lien on the deposit in favor of Donnell, Lawson & Co., is founded upon the alleged rule of the common law that no lien can be created by contract, upon property not *in esse* when the contract is made.   But that a contract for a lien on property not *in esse* may be effectual in equity to give a lien as between the parties, when the property comes into existence, and where there are no intervening rights of creditors or third persons, seems to be established by several decisions in this court. (*Hale* v. *Omaha Natl. Bank*, 49 N. Y. 626; *McCaffrey* v. *Woodin*, 65 id. 459; 22 Am. Rep. 644; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113.) It is to be observed that the lien of Donnell, Lawson & Co., was to attach only to funds of the bank in their hands. If the bank did not perform its agreement to keep the deposit good, the only remedy of Donnell, Lawson & Co., would be upon the contract, or in case of payment of the acceptances, upon the implied contract for reimbursement.   In this case the bank not only entered into an agreement to give a lien, but subsequently put the fund upon which the lien was to attach, into the possession of the pledgee, and in addition to the original authority, concurrently with, or at about the time of the appropriation, specifically authorized its application to the discharge of Donnell, Lawson & Co.'s liability upon the acceptances.   Here was not only the precedent declaration spoken of in some of the cases, but the subsequent act uniting with it to perfect and complete the transaction.   The agreement was, we think, effectual between the parties, unless forbidden upon some notion of public policy.

The claim that the transaction was invalid on this ground cannot be maintained. It is said that it constituted an unlawful preference. But the agreement for the lien was concurrent with the obligation assumed by Donnell, Lawson & Co., and was made to secure them against their liability as accommodation acceptors for the bank, assumed on the faith of the agreement. When the fund was appropriated, the appropriation was made in pursuance of the original agreement, as well as by the subsequent express authority of the bank. Moreover, regarding the transaction, disconnected from the equities which surround it, as a simple preference of one creditor of the corporation, we do not understand that such preference is unlawful. The right of a failing debtor to prefer one creditor to another in the distribution of his property, while it has been often regretted, is recognized both in courts of law and equity. (1 Sto. Eq., § 370; 2 Kent's Com. 532; *Wilkes* v. *Ferris,* 5 Johns. 335; *Murray* v. *Riggs,* 15 id. 571; *Jacobs* v. *Remsen,* 36 N. Y. 668.) A corporation possesses in this respect the same right as an individual. It may execute a mortgage, or give a lien which shall operate as a preference, unless restrained by its charter or by statute. (*In re File Co.* v. *Birmingham Banking Co.,* L. R., 6 Ch. App. 83; *Catlin* v. *Eagle Bank,* 6 Conn. 233; *Dana* v. *Bank U. S.,* 5 W. & S. 223; 2 Kent's Com. 315, note; Angell & Ames on Corp., § 187.) The Revised Statutes prohibit preferences by insolvent corporations. (1 R. S. 593, § 9.) But the prohibition applies to domestic and not to foreign corporations, and we have not been referred to any provision of the charter of the Mastin Bank, or any statutory provision of Missouri, which forbids a transaction like the one in question. Neither was the agreement of June 10, 1878, fraudulent as to the holders of drafts on the defendants, issued by the Mastin Bank after that agreement was made. The defendants were under no obligation to accept the drafts to which that agreement related. They incurred the liability of acceptors upon the condition that they should have a lien and a right of appropriation for their indemnity. They did not agree to accept subsequent drafts, nor

were such drafts taken on the faith of any agreement that they should be paid out of the deposit with Donnell, Lawson & Co. The lien claimed by Donnell, Lawson & Co. attached only to funds in their actual possession, and was not subject to the objection which lies to secret liens attempted to be given or enforced upon property in possession of the general owner. The equity of the defendants is superior to that of the other creditors of the bank, and we see no reason for setting aside the arrangement between Donnell, Lawson & Co. and the bank, for the benefit of general creditors.

The point that the plaintiff was entitled to recover the difference between the present value of the drafts on the 3d of August, 1878, and their nominal amount, is not we think well taken. They had a right, under the agreement made, to charge against the account of the bank the face of the drafts, and to hold that amount to meet the sum which they would be bound to pay at their maturity. The question as to the part of the deposit which exceeded the sum claimed in the complaint, was properly disposed of by the General Term.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.