ROBERT DEELEY et al., Respondents, v. JOHN DWIGHT et al.,
Impleaded, etc., Appellants.

An action to recover damages for the conversion of chattels will not lie
to enforce an equitable lien, as against the owner of the legal title, in
possession of the property, who has not contracted it to the lienor.

A legal title to property not in existence, actually or potentially, cannot
be transferred by way of mortgage.

Such an instrument, however, may be construed by a court of equity as
operating by way of present contract to give a lien, which, as between
the parties, takes effect, where there are no intervening rights of third
persons, when the property comes into existence, and into the owner-
ship of the party executing the instrument.

In an action for the conversion of certain machinery, it appeared that
plaintiff manufactured the machinery under a contract with one G., who
had contracted to manufacture and deliver the same to defendants, and
had received the purchase-price. Before any considerable portion of the
machinery was manufactured, G. executed an instrument, in form a
chattel mortgage, to one of the plaintiffs upon the machinery then com-
pleted and that thereafter to be made, as security for the price agreed
to be paid. As the different pieces were delivered to G. he delivered
them to defendants, who, before the filing of the mortgage and before
they had notice of its existence or of plaintiffs' claim, expended a large
sum in setting up the machinery, and in improvements to be used in
connection with it. *Held*, the action was not maintainable.

(Argued January 28, 1892; decided March 8, 1892.)

APPEAL from order of the General Term of the Court of
Common Pleas for the city and county of New York, made
March 6, 1890, which set aside a verdict in favor of defendant
directed by the court, and granted a new trial.

This action was brought to recover damages for the conver-
sion of certain machinery, to which plaintiff claimed title
under a chattel mortgage executed by Joseph Gandolfo to the
plaintiff Robert Deeley to secure the purchase-price. Defend-
ants, who were partners, claimed as purchasers from Gandolfo
for value and in good faith.

In the autumn of 1883, Joseph Gandolfo contracted to sell
machinery to be manufactured and thereafter delivered to
the defendants for $5,666. In performance of the contract

'Gandolfo furnished additions and performed labor for which the defendants agreed to pay $557.50, making the full amount of the indebtedness $6,223.50, which the defendants paid as follows: October 23, 1883, check $2,250, November 22, 1883, check $1,500, December 11, 1883, check $2,473.50.

The machinery was manufactured by the plaintiffs for Gandolfo, and was delivered to him at various dates in February, March, and April, 1884, for which he agreed to pay the plaintiffs $4,700. As the different pieces of machinery were delivered to Gandolfo he delivered them to the defendants, who set them up in their factory.

February 21, 1884, before much if any of the machinery was manufactured, Gandolfo gave his promissory note due on demand to Robert Deeley one of the plaintiffs for $4,700, the agreed purchase-price, to secure the payment of which Gandolfo on that day executed and delivered to Robert Deeley a chattel mortgage upon the machinery then manufactured, and that which was afterwards to be made and delivered pursuant to the oral contract theretofore entered into between them. The mortgage was in the usual form and recited that the articles are "now in the possession of the said party of the first part in the building of Messrs. John Dwight & Co. 1st Avenue, between 112th and 113th Sts., in the city of New York."

The mortgage contained the usual clause selling the goods to the mortgagee upon condition, and as security, and that in case default was made in payment, power was given to take and sell the goods. Afterwards $1,500, was paid on the note and May 13, 1885, the mortgagee indorsed a statement upon the mortgage that there was then due and unpaid thereon $4,319.75, and on the same day filed it in the office of the register of the city and county of New York. The mortgage had not been previously filed, and the defendants had no notice of its existence nor of the plaintiffs' claim and before it was filed defendants had expended $5,355.27, in setting it up, in other machinery and improvements to be used in connection with that sought to be recovered.

*A. P. Ketchum* for appellants. Dwight was a *bona fide* purchaser within the simple meaning of that term. (*Barnard* v. *Campbell*, 58 N. Y. 73.)

*George P. Hotaling* for respondents. Assuming that all or some of the articles mortgaged were not in existence at the time the mortgage was given, it is still a valid mortgage, as it is a purchase-money mortgage; and as the plaintiffs finished the articles from time to time, the mortgage took effect as to each article immediately upon its completion, or at least, upon its delivery, as to any one not a *bona fide* purchaser for value from Gandolfo. (*Kribbs* v. *Alford*, 120 N. Y. 519; *Ludwig* v. *Kipp*, 20 Hun, 265; *McCaffrey* v. *Woodin*, 65 N. Y. 459; *Willets* v. *Brown*, 42 Hun, 140; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Coates* v. *Donnell*, 94 id. 168; *Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302; *Comani* v. *Lakey*, 80 N. Y. 349; *Andrews* v. *Durant*, 11 id. 35; *Burrows* v. *Whittaker*, 71 id. 291; *Woods* v. *Russel*, 5 B. & A. 942.) Gandolfo and the Dwights also, by being in privity with him, are estopped by the warranty of title in the mortgage from claiming that he had no title at the time the mortgage was given. (*Parshall* v. *Eggert*, 54 N. Y. 18; *Teft* v. *Munson*, 57 id. 97; *Gardiner* v. *Suydam*, 7 id. 357; *House* v. *McCormick*, 57 id. 311; *Judd* v. *Sukens*, 62 id. 266.) A chattel mortgage is valid without filing as against all persons except creditors having judgments or liens and subsequent purchasers in good faith. (*Van Heusen* v. *Radcliff*, 17 N. Y. 583; *Thompson* v. *Van Vechten*, 27 id. 580; *Kennedy* v. *U. Bank*, 23 Hun, 496; *Button* v. *Rathbone*, 126 N. Y. 187.) The term "subsequent purchaser in good faith" does not include one who takes in payment of a precedent debt, or one who takes in performance of an executory contract of sale made prior to the acquiring possession or of some evidence of title by the vendor, although the price is paid at the time of the contract. It only includes those who part with value at the time the title or property is transferred or delivered, and on the faith thereof. (*Button* v. *Rathbone*, 126 N. Y. 187; *Van Heusen* v. *Rad-*

*cliff,* 17 id. 583; *Thompson* v. *Van Vechten,* 27 id. 580; *Wood* v. *Robinson,* 22 id. 564; *Weaver* v. *Barden,* 49 id. 286; *Barnard* v. *Campbell,* 65 Barb. 286; 55 N. Y. 456; 58 id. 73; *Voorhees* v. *Olmstead,* 66 id. 116; *Dusenbery* v. *Hurlbert,* 59 id. 541; *Kursheedt* v. *McCune,* 20 Abb. [N. C.] 265.) The defense of estoppel cannot aid the defendants on this appeal for two reasons; first, because as a matter of law the evidence did not establish an estoppel; second, because the evidence, even if sufficient, should have been submitted to the jury, and as it was not, the order granting a new trial was proper. (*Voorhees* v. *Olmstead,* 66 N. Y. 113; *Knights* v. *Miffen,* L. R. [5 Q. B.] 660; *McNeil* v. *N. Bank,* 46 N. Y. 325; *C. Bank* v. *N. Bank,* 50 id. 575; *Anderson* v. *Read,* 106 id. 333; *Barnard* v. *Campbell,* 55 id. 457; *McMasters* v. *Ins. Co.,* 55 N. Y. 222; *R. Co.* v. *Rothery,* 107 id. 310.) Where a defense rests solely upon the testimony of a party it should be left to a jury to determine its weight or value. This is especially so when the testimony is contradictory or improbable on any essential point. (*C. Bank* v. *Diefendorf,* 123 N. Y. 191; *Vosburgh* v. *Diefendorf,* 119 id. 357; *Joy* v. *Diefendorf,* 28 N. E. Rep. 602; *Munoz* v. *Wilson,* 111 N. Y. 295–300; *Elwood* v. *W. U. T. Co.,* 45 id. 549; *Honegger* v. *Wettstein,* 94 id. 252–261; *Bagley* v. *Bowe,* 105 id. 177; *Koehler* v. *Adler,* 78 id. 287–293; *Benedict* v. *Williams,* 48 Hun, 123; *Lesser* v. *Wunder,* 9 Daly, 70.) But the defendants failed to prove, even *prima facie,* their defense as *bona fide* purchasers, or that of estoppel, inasmuch as they did not show that John E. Dwight did not know that Gandolfo, had given a mortgage on it to anyone. The burden was on the defendants to show this affirmatively. (*C. Bank* v. *Diefendorf,* 123 N. Y. 191; *Seymour* v. *McKinstry,* 106 id. 230; *Vosburgh* v. *Diefendorf,* 119 id. 357; *Stevens* v. *Brennan,* 79 id. 258; *Joy* v. *Diefendorf,* 28 N. E. Rep. 682; *Button* v. *Rathbone,* 118 N. Y. 666.) It was not necessary that Dwight should have known that Deeley held the mortgage or who it was; it was sufficient if he knew or suspected that a mortgage had been given. If he did, then it was notice and he should

have inquired and insisted on knowing all the facts. (*Ellis* v. *Hermann*, 90 N. Y. 466, 474.) The Dwights were bound under the circumstances to have made some effort to learn the facts, and are chargeable with notice of all that such inquiry would have disclosed. (*Dunn* v. *Hornbeck*, 72 N. Y. 80, 89; *Pringle* v. *Phillips*, 5 Sandf. 157; *Parker* v. *Connor*, 93 N. Y. 124.) If upon any finding warranted by testimony the plaintiffs would have been entitled to recover, the direction of a verdict for defendants was erroneous and a general exception to such ruling was sufficient. (*Trustees* v. *Kirk*, 68 N. Y. 458–467; *Frecking* v. *Rolland*, 53 id. 422–426; *Train* v. *H. P. Co.*, 62 id. 598–604; *Vail* v. *Reynolds*, 118 id. 297.) Upon an appeal from an order granting a new trial the appellant takes the risk not only of the questions considered by the court below, and upon which they have made the order, but of every other exception appearing upon the record, and every legal question that can be made by the respondent, who may sustain his order upon showing any legal error, whether noticed by the court below or not. (*Caswell* v. *Hazard*, 121 N. Y. 484; *Mackey* v. *Lewis*, 73 id. 382; *Noyes* v. *Wyckoff*, 114 id. 204.)

FOLLETT, Ch. J. An action to recover damages for the conversion of chattels is a strictly legal one which cannot be maintained unless the plaintiff is entitled to the immediate possession of the property, if in existence. Except as provided by statute possession by the lienor of chattels on which the lien is claimed is indispensable to support a common-law lien. One having such a lien can maintain trover if the property is wrongfully taken or withheld from his possession, but such an action will not lie to enforce an equitable lien as against the owner of the legal title who remains in possession of the property and has not contracted it to the lienor. The instrument under which the plaintiff claims to recover is in form a chattel mortgage. Gandolfo, who executed it, assumes to transfer the legal title to the machinery to Robert Deeley, the plaintiff's assignor, subject to be defeated upon the pay-

ment of $4,700. But the machinery, not having been then manufactured, Gandolfo had no title to it (*Andrews* v. *Durant*, 11 N. Y. 35; *Comfort* v. *Kiersted*, 26 Barb. 472), and the instrument did not vest the legal title of the machinery in Deeley, nor did it create a legal lien upon the property described therein. (*Gardner* v. *McEwin*, 19 N. Y. 123; *Jones* v. *Richardson*, 10 Met. 481; *Pettis* v. *Kellogg*, 7 Cush. 456; *Otis* v. *Sill*, 8 Barb. 102; *Conderman* v. *Smith*, 41 id. 404; Thomas Chat. Mort. § 137; Jones Chat. Mort. § 138.)

We find no case which holds that the legal title to property not in existence actually or potentially can be transferred either by way of sale or mortgage. That an equitable lien may be created on property to be brought into existence is well settled, and an action to foreclose the lien may be maintained. It was said in *Coats* v. *Donnell* (94 N. Y. 177), " A contract for a lien on property not in *esse* may be effectual in equity to give a lien as between the parties, when the property comes into existence, and where there are no intervening rights of creditors or third persons, seems to be established by several decisions in this court." *Kribbs* v. *Alford* (120 N. Y. 519), which is relied on by the respondent, is not in conflict but in harmony with these views. It was there said " invalidity at law imports nothing more than that a mortgage of property thereafter to be acquired is ineffectual as a grant to pass the legal title. A court of equity, in giving effect to such a provision, does not put itself in conflict with that principle. It does not hold that a conveyance of that which does not exist operates as a present transfer in equity any more than it does in law. But it construes the instrument as operating by way of present contract to give a lien, which, as between the parties, takes effect and attaches to the subject of it as soon as it comes into the ownership of the party. Such we deem the rule to be in equity in this state." (*McCaffrey* v. *Woodin*, 65 N. Y. 459; *Wisner* v. *Ocumpaugh*, 71 id. 113; *Coats* v. *Donnell*, 94 id. 168, 177; *Hale* v. *Omaha Nat. Bank*, 49 id. 626, 632.)

It follows from these views that plaintiffs failed to establish

a legal title, either as general or special owners, and were not entitled to recover.

The order should be reversed and the judgment entered on the verdict, affirmed, with costs.

All concur.

Order reversed and judgment accordingly.