(37 Misc. Rep. 653.)

### MATHEWS v. HARDT et al.

(Supreme Court, Special Term, New York County. April, 1902.)

BANKRUPTCY—FRAUDULENT CONVEYANCE.

A firm agreed to advance to a corporation certain moneys, on the consideration that the president and principal stockholder of the corporation should turn over its assets to the firm, and that when the corporation should sell a bill of goods it should be made payable to the firm, which was to have a lien for its advances upon the corporate assets. *Held*, that the agreement was fraudulent as to creditors of the corporation, and voidable by the assignee in bankruptcy of the president.

Action by Armitage Mathews, trustee in bankruptcy, against Engelbert Hardt and others, to set aside transfers by a bankrupt. Judgment for plaintiff.

Black, Olcott, Gruber & Boynge, for plaintiff.
Blumenstiel & Hirsch, for defendants.

STECKLER, J. As to the facts in this case there is little, if any, conflict. Prior to September, 1899, the defendant Clinton H. Smith did business on his own account as a shirt manufacturer, but failed about that date. After the failure said defendant organized the defendant corporation, the Clinton H. Smith Company, of which company the defendant Smith became president, and its directors included said defendant Smith and the defendant Krause, the latter being a member of the copartnership Hardt, Von Bernuth & Co., all the members of which are defendants in this action; and the defendant Fries, the credit man of the said copartnership, was the secretary and treasurer of the corporation during the whole of its existence. The copartnership received stock in the corporation in payment of the indebtedness owing by Smith, individually, to the partnership at the time of his failure. The capital stock of the Clinton H. Smith Company was $100,000, of which $50,000 was common, and $50,000 preferred, stock. The common stock was issued

for the trade-mark and good will of the defendant Smith, and $23,400 of the preferred stock was issued for his machinery and merchandise. The balance of the preferred stock was never issued. In consideration of the turning over of his assets by the defendant Smith to the corporation, Hardt, Von Bernuth & Co. agreed to advance the corporation from $35,000 to $40,000 as the corporation needed it in its business, and it was further agreed, orally, between the corporation and the copartnership, that when the corporation sold goods the bill therefor should be payable to the copartnership, which discounted the bills for the corporation, and that for the advances made the copartnership should at all times have a lien upon all of the assets of every kind either then owned or which might thereafter be acquired by the corporation. In October, 1900, when the corporation was insolvent, the defendant Smith applied to the defendant copartnership for further advances, and, being unable to get further substantial sums, Smith resigned as director and president of the corporation, and abandoned the business, and within a few days thereafter the copartnership, under the alleged agreement, took possession of and sold the assets of the corporation and credited itself with the amount realized. There is still a large sum due the copartnership. On the petition of creditors of the corporation, filed December 26, 1900, it was adjudicated a bankrupt February 1, 1901, and the plaintiff, as trustee in bankruptcy, sues to set aside the transfers to Hardt, Von Bernuth & Co. as fraudulent and void as to creditors, and for a return of the property or its value.

By chapter 314 of the Laws of 1858, the provisions of which are now incorporated in the personal property law of 1897 (chapter 417, § 7), a trustee of an insolvent estate may disaffirm, treat as void, and resist all acts done and transfers and agreements made in fraud of the rights of any creditor. It has been held that such a trustee cannot take advantage of failure to file a chattel mortgage, although the fact that the mortgage is not filed makes it void as to creditors, unless he represents creditors who have obtained a lien by execution or attachment upon the property. Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045; Stephens v. Meriden Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678; In re New York Economical Print Co., 49 C. C. A. 133, 110 Fed. 514. It has also been decided that assignees in bankruptcy, except in cases of fraud, take only such rights and interests in the property of the bankrupt as he himself had, and could have himself claimed and asserted at the time of his bankruptcy, and that they are affected with all the equities which would affect the bankrupt himself. Barnard v. Railroad Co., 4 Cliff. 351, Fed. Cas. No. 1,007. The facts in this case, however, show something more than a mere failure to file a chattel mortgage, and lead to the inquiry whether the oral agreement for a lien between the corporation and the copartnership was, under all the circumstances, in fraud of the rights of creditors, within the meaning of the act of 1858. It is undoubtedly the rule that, although the legal title to property not in existence, actually or potentially, cannot be transferred by way of mortgage, such an instrument may be construed by a court of equity as operating by way of present

contract to give a lien, which, as between the parties, takes effect, where there are no intervening rights of third persons, when the property comes into existence and into the ownership of the party executing the instrument (Deeley v. Dwight, 132 N. Y. 59, 30 N. E. 258, 18 L. R. A. 298; Coats v. Donnell, 94 N. Y. 177; Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811); and as between the corporation and Hardt, Von Bernuth & Co., specific performance of the contract to give a lien would probably be decreed by a court of equity (Burdick v. Jackson, 7 Hun, 488). But it seems to me that cases coming within the foregoing rule are distinguishable from the case at bar. Here not only was property not in existence sought to be pledged by the oral contract, but, in compliance with the understanding of the parties, the arrangement permitted the corporation to continue in business, selling the property on hand, replacing it with other property from time to time as the needs of the business required, and dealing with the property as its own.

"The true question, then, is whether a person engaged in traffic and indebted can make a valid contract or conveyance in favor of one creditor, by which he shall possess a lien upon all the chattels which the debtor shall from time to time have on hand, allowing the latter to sell and purchase like an unqualified owner, the lien attaching only to what may be on hand at the time it is sought to be enforced. The proposition requires only to be stated to be refuted. * * * It [the instrument] was not intended to create an absolute lien upon any property, but a fluctuating one, which should open to release that which should be sold, and to take in what should be newly purchased. It may be safely assumed that the liberty to sell would not have been given, but for the right supposed to be acquired over subsequent purchases. * * * My own opinion is that the existence of such a provision, out of the mortgage or in it, would invalidate it as matter of law, and that where the facts are undisputed this court should so declare. The manifest tendency of such arrangements to defraud creditors by giving the mortgagor a false credit, and their incongruity with the just and legal idea of a mortgage, are, in my opinion, sufficient to condemn them." Denio, J., in Edgell v. Hart, 9 N. Y. 217, 219, 59 Am. Dec. 532.

In the case cited the purchaser of a stock of goods in a retail store executed to the vendor a mortgage upon the entire stock, by schedule, the mortgage including also in its terms all articles of a like nature which might be in the store at the time of default in the condition, the mortgagor to continue in possession, but being forbidden by a clause in the mortgage from selling on credit; and the court held that the mortgage was in its terms fraudulent as against creditors, and that there was no question to be submitted to a jury with regard to it. See, also, Potts v. Hart, 99 N. Y. 168, 1 N. E. 605; Cook v. Bennett, 60 Hun, 8, 14 N. Y. Supp. 683; Wait, Fraud. Conv. (3d Ed.) §§ 248, 249. If such mortgage is void in part, it is void altogether. Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755; Levy v. Hamilton (Sup.) 74 N. Y. Supp. 159.

While the facts in the cases cited are not identical with those in the case at bar, it seems to me that the principles enunciated in those decisions are controlling in this controversy; that in law the arrangement between Hardt, Von Bernuth & Co. and the corporation was conclusively fraudulent; and that the course of trial, if not the issues raised by the pleadings, justifies such a disposition of this case.

In Southard v. Benner, 72 N. Y. 424, it is held that an agreement

between the mortgagor and mortgagee of a stock of merchandise that the mortgagor may go on and sell the goods and use the proceeds in his business, which arrangement is carried out by permitted sales, makes the transaction fraudulent in law as against the general creditors of the mortgagor, and that the assignee in bankruptcy of such creditors, although they have obtained no lien, by judgment or otherwise, on the property of the mortgagor, may bring an action to annul the fraudulent transfer and to recover the property or its avails. It is true that in that case the question of fraud was submitted to the jury as a question of fact, but the court said, at page 430:

"The question then is, did the arrangement, if made as alleged, and carried out by the permitted sales of, and dealing with, the mortgage property, necessarily invalidate the mortgage? Did it conclusively prove that the mortgage was fraudulent in law; that is, so conclusively establish the fraud that a verdict of the jury to the contrary would have been set aside as against evidence? Such an arrangement is incompatible with a mortgage designed only as security to the mortgagee. The dealing with the mortgaged property as a merchandise by the mortgagor, and the sale of the same in the ordinary course of business as a merchant with the consent of the mortgagee, necessarily destroys the value of the mortgage as a security, and makes it only available, if for any purpose, so long as this arrangement and dealing continues to protect the property from creditors, and secure it to the mortgagor. Such a transaction is necessarily fraudulent." See, also, Coleman v. Burr, 93 N. Y., at page 31, 45 Am. Rep. 160.

The only difference between the contract in Southard v. Benner and the one under consideration is that in that case a lien was attempted to be given on property then owned by the mortgagor, coupled with a power of sale and use of the proceeds by him; while in this case there exist not only the same facts in connection with what at most was an oral, and, therefore, unfiled, mortgage, but also the additional element of a lien by the creditor on property to be acquired by the corporation in lieu of that sold by it. There must be judgment for plaintiff, with costs.

Judgment for plaintiff, with costs.