## In re MATTON.

### Appeal of SHOVAH.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 149.

Bankruptcy ⊸140(1)—Ownership of boat as between trustee and contract purchaser from bankrupt.

At the time of bankruptcy bankrupt was building a boat under a contract which retained title in him until full payment of the contract price. The contract purchaser paid a part of the price in advance, and gave his note for the remainder, which bankrupt indorsed and sold, also assigning to the purchaser "any claim which he might have against the boat." At the time of bankruptcy the boat was uncompleted, though the time for its delivery under the contract had passed, and it came into possession of the trustee. *Held,* that the giving of his note by the contract purchaser did not constitute payment, the contrary intention being evidenced by the provision of the contract for retention of title, and that neither the purchaser nor the transferee of the note had any title to or lien on the boat as against the trustee.

Appeal from the District Court of the United States for the Northern District of New York.

In the matter of P. Jesse Matton, bankrupt, William A. Shovah, Jr., appeals from an order of the District Court. Affirmed.

Appeal from an order dismissing Shovah's petition and adjudging that the boat sought by Shovah to be delivered to him is the property of the trustee in bankruptcy. The petition in bankruptcy was filed May 14, 1921, and Matton was adjudicated a bankrupt on June 2, 1921. Matton, on and subsequent to January 5, 1921, was a boat builder at Watervliet, New York. Under date of January 5, 1921, he and Shovah entered into a written agreement whereby Matton agreed to build a boat for Shovah according to specifications fully set forth.

Shovah agreed to pay Matton for the construction of the boat $10,555, as follows: (1) $5,555 on January 8, 1921. (2) Shovah "to give a four months' promissory note, with interest for $5,000 upon the execution and delivery of this agreement." Matton agreed "that said boat will be completed and ready for delivery at the shipyards of party of first part, May 8, 1921," and "to pay $5 per day for each day that barge was not completed after May 8, 1921, * * * in case of embargoes, strikes, and like unforeseen conditions * * * which might interfere with the performance of the contract at the time specified." Matton was to be allowed such further time as necessary for the complete performance of this contract.

It was further agreed that, "during the construction of said boat and before the same is completed and ready for delivery," Matton will "keep the same insured * * * in an amount at least equal to any sum or sums paid and advanced by" Shovah, "and the loss, if any, under such policy shall be payable to" Matton, "and the proceeds of such policy * * * shall be collected by" Matton "and applied by him towards the reconstruction of said boat according to the specifications. * * * And it is further agreed that *after the completion and delivery of said boat* (italics ours), in case any balance of the purchase price or contract price shall remain unpaid," Shovah "will procure a policy of insurance, * * * and will pay the premium therefor, and shall cause the loss, if any, under said policy to be payable to" Matton, "as his interest shall appear. Said policy of insurance to be and remain in the custody of" Matton "until the full contract price, and interest, if any, shall be paid.".

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It is further mutually agreed and understood that the title to said boat shall remain in" Matton "until the full contract price is paid, at which time" Matton "hereby agrees to execute and deliver to" Shovah "a custom house bill of sale in the form required by law. It is further mutually agreed by and between the parties hereto, that the said party of the first part may assign this contract, or any part thereof, to any responsible individual, firm or corporation." The down payment of $5,555 was made on January 5, 1921, and the note for $5,000 made and delivered to Matton.

On February 18, 1921, the parties by another agreement in writing modified the agreement supra, so far as it related to the promissory note, so as to read: "Balance $5,000, to be paid four months from the date hereof, the same to be evidenced by a promissory note, with interest, which note the party of the first part agrees to renew for a period of three months, providing at least $250, with interest to date, be paid thereon, and continue renewing said note for periods not to exceed three months, providing that when the continuation notes become due, at least the sum of $250, with interest to date be paid thereon. And it is hereby understood and agreed by and between the parties hereto that this agreement be attached to and made part of the contract dated January 5, 1921."

Intermediate January 5, 1921, and February 18, 1921, and, so far as the record discloses, without Shovah's knowledge, Matton, on February 1, 1921, in consideration of $4,500, indorsed and transferred Shovah's note to William H. Nealor and executed and delivered to him a paper reading: "I, P. Jesse Matton, * * * in consideration of the sum of $4,500 to me in hand paid this day by William H. Nealor, * * * do hereby sell, and transfer and assign unto the said William H. Nealor all my right, title, and interest in and to any claim which I might, could or should have against the barge No. 35 known, * * * under construction and when completed the William E. Shovah, New York * * * (now?). It is intended by this instrument to transfer and assign to the said William H. Nealor all my right, title, and interest of every kind and nature which I might have against the said above-mentioned barge."

At some later date, Nealor transferred all the right, title, and interest he had acquired from Matton to the Bank of Waterford as collateral security for an indebtedness of his (Nealor's) to the bank. On February 1, 1921, construction of the boat had not proceeded far; the labor expense then amounting to only about $126. The boat was not completed nor ready for delivery on May 8, 1921 (the contract delivery date), nor on May 14, the date of filing the bankruptcy petition. On May 14, a receiver was appointed by the District Court and he petitioned the court for instructions.

The record fails to disclose what was set forth in the receiver's petition, but the opinion of the District Judge indicates that he was asked to determine what to do with the boat. His instruction was that the boat should be advertised and sold and notice given to Shovah, Nealor, and the Bank of Waterford. He expressed the opinion that neither Shovah nor Nealor had "any claim or lien" on the boat. It further appears that pursuant to order of the court, the receiver proceeded with the construction of the boat and on June 24, when the trustee was appointed, the receiver had expended $1,825.26 but the boat was still uncompleted. Whether Shovah was heard on the receiver's application for instructions does not appear but the special master in his opinion states that "the subject-matter of this opinion has once passed the scrutiny of Judge Cooper upon petition of the receiver for instructions, etc., and was then decided adversely to claimant, but with permission to institute this proceeding." Under date of July 12, 1921, after the trustee was appointed, Shovah petitioned the court that the boat be delivered to him, with damages for depreciation. The petition sets forth the transactions supra between Shovah and Nealor, alleges that Shovah is the owner of the boat, subject to any lien of Nealor or the Bank of Waterford, and is entitled to immediate possession, that the boat was launched and substantially completed prior to the appointment of the trustee and his taking possession, that demand to deliver the boat was made of the trustee who refused delivery, that the boat was deteriorating owing to exposure and its market value depreciated. The

trustee answered, substantially admitting the facts of the transaction but controverting the legal effect thereof asserted by petitioner and denying that the boat was completed. The District Court referred the matter to a special master.

The testimony was confined to ascertaining the condition of the boat at its various stages of construction. The master in his report, dated August 1, 1921, found that the boat was launched, uncompleted, on or about June 14, 1921, and was still uncompleted and in the trustee's possession. He further found, as a fact that there was "no evidence that since said transfer of said note by the bankrupt it has been in any manner retransferred or returned to him, or that he has been charged with actual responsibility as an indorser of it." The master's conclusions of law were, inter alia, as follows:

"Third. When the bankrupt indorsed and transferred said note to Nealor and received from him said sum of $4,500 in consideration therefor, the indebtedness of Shovah to the bankrupt, represented by said note, was paid.

"Fourth. The title of the boat did not pass to Nealor or to the bank.

"Fifth. The bankrupt was not bound to deliver said boat to claimant prior to its completion.

"Sixth. At date of bankruptcy the title of said boat remained in the bankrupt.

"Seventh. Upon the qualification of the trustee the title of said boat devolved upon him as of the date of bankruptcy, except in so far as impaired, if at all, by any right of any innocent third party accruing between said date and date of adjudication, and he is lawfully in possession thereof.

"Eighth. Claimant has failed to establish that he is the owner and entitled to possession of said boat. * * *"

The District Judge confirmed the master's report, except as to "Third," supra, and added a finding not now necessary to consider. Counsel agreed on the argument that the boat had been sold, and the practical question now is as to the disposition of the proceeds.

Foley & Martin, of New York City (Lawrence N. Martin and William Shea, both of New York City, of counsel), for appellant.

Eugene McLean, of Watervliet, N. Y. (Clark Cipperly, of Troy, N. Y., of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The master's comprehensive and clear opinion discusses fully the essential questions of the case, and thus it is necessary for us only to point out the main features on which decision is based. Shovah contends that, when he delivered his note and the cash on January 5, 1921, pursuant to the agreement of the same date, he made payment of his contract obligation. It is elementary that whether or not payment has been made depends upon the intent of the parties. The transaction here clearly negatived payment. Matton was at all times to retain title until the note was fully paid. Until the boat was complete, insurance proceeds in the event of loss were to be paid to Matton to reconstruct the boat. If the boat were completed and delivered, then, if any balance of the "purchase price or contract price" remained unpaid, Matton was to be the beneficiary of the insurance policy to the extent of the balance due him. Further, Matton was to hold title until the full contract price was paid. The modification agreed on in the writing of February 18, 1921, serves to confirm this view. Instead of paying the note in full on May 8th, contemporaneously with the date fixed for the delivery of a completed boat, Shovah was to have the

privilege of paying in installments and, upon due payment of the installments, renewals were to be granted by Matton for a period of about four years.

Thus, if Matton had been able to deliver the boat on May 8, 1921, he was still to retain title until Shovah paid the full contract price. It is plain that the parties intended that, so long as any of the purchase price remained unpaid, Matton should have the security of the title remaining in him, even though possession of the boat would be with Shovah, had the boat been completed and delivered as per the contract. Such an arrangement is wholly inconsistent with payment.

Payment is usually accompanied with absolute delivery; the person delivering the res being willing to look to something else than the res for the payment of the debt. If, on May 8, 1921, Matton had delivered the boat under the agreement of February 18, Shovah would not have owned the boat free and clear of incumbrance. As between him and Matton, it may be that then equity would have declared him a mortgagor or a pledgor (we need not stop to inquire which) in possession and Matton a mortgagee to the extent of any unpaid balance of the contract price. The principle is well stated in 27 Cyc. 991 et seq., in respect of real estate mortgages and is applicable to chattel mortgages. Other questions might arise, if the rights of creditors were involved. Shovah, in now asking, inter alia, for equitable relief, does not realize that the present situation is different from what may have been the case, if the boat had been delivered prior to May 14, the date of filing the petition in bankruptcy.

Assuming, then, as we must, that the execution and delivery of the note in January did not constitute payment and that the boat was not completed nor delivered prior to May 14, the next inquiry is as to the title and rights of the trustee in bankruptcy. Under section 47a (2) of the Bankruptcy Act (Comp. St. § 9631), a trustee takes the status of a creditor such as described in the statute "as of the time when the petition in bankruptcy is filed." Bailey v. Baker Ice Machine Co., 239 U. S. 268, 276, 36 Sup. Ct. 50, 60 L. Ed. 275; In re Morris, 204 Fed. 770, 123 C. C. A. 220; Millikin v. Second Nat. Bank, 206 Fed. 14, 16, 124 C. C. A. 148. As of May 14, the legal title was in Matton, and hence in the trustee. Possession of certain property necessary for, but not yet making up, a completed boat, was in Matton, and hence in the trustee. On that day the trustee was in the position of a creditor "armed with process."

There was no lien, equitable or otherwise, in favor of Shovah, because he and Matton had not so agreed, and the only title or lien (whichever way it may be put) which Shovah was to have under the agreement would spring into existence only upon delivery of the boat. Deeley v. Dwight, 132 N. Y. 59, 64, 30 N. E. 258, 18 L. R. A. 298. The transaction between Matton and Nealor does not in any manner affect the title of the trustee, nor give Nealor any interest in the boat or the proceeds derived from the sale thereof. It will be noted that what Matton transferred was, not his title to and in the boat, but all his right, title, and interest in and to "any claim which he might have against the boat." The intention, as stated by the parties, was to

transfer to Nealor all the right, title, and interest which Matton "might have against the boat."

It is apparent that this was but another way of saying that Nealor was to have Matton's claim against Shovah, if any balance was unpaid by Shovah. The record fails to disclose that on May 14, there was any balance due from Shovah. Shovah's original note presumably became due on May 8 and Nealor had bought that note from Matton, and consequently Matton thereafter was not the owner or the holder of the note, and could not enforce any claim in respect thereof, unless he had been called upon to respond as an indorser. However, as recited, supra, in the master's seventeenth finding, there is no evidence that the note was returned to Matton or that he has been charged as an indorser in respect thereof.

At the time that Matton and Nealor entered into the agreement of February 1, there was no boat in existence legal title to which Matton could transfer to Nealor (Deeley v. Dwight, supra), and this accounts for the language in the agreement as to transferring right, title, and interest in and to any "claim" which Matton might have against the boat. As against creditors, the agreement of February 1, 1921, unaccompanied with possession of a completed boat was ineffective to transfer title. When Nealor bought Shovah's note from Matton, he did not thereby pay Matton for the boat. Nealor would still have recourse against Matton as indorser. Thus nothing occurred up to May 14, from any aspect, whereby Matton lost title.

We find it unnecessary to discuss at length Hurley v. Atchison, Topeka & Santa Fé Ry. Co., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729, for the reason that in that case the railway company paid in advance and the essential facts which influenced the decision are not analogous with those in the case at bar. As Nealor is not a party to the proceedings, we go no further than to say that the transaction between him and Matton does not in any way change the status of the trustee, as the owner of the boat who is entitled to any fund which may have been produced by its sale.

The order of the District Court is affirmed, with costs.