## In re NOEL.

### (District Court, D. Maryland. April 17, 1905.)

1. BANKRUPTCY—RECOVERY OF PREFERENCE—JURISDICTION OF BANKRUPTCY
COURT.

Under Bankr. Act July 1, 1898, § 60b (30 Stat. 562, c. 541 [U. S. Comp.
St. 1901, p. 3445]), as amended by Act Feb. 5, 1903, 32 Stat. 799, c. 487
[U. S. Comp. St. Supp. 1903, p. 416], which gives a court of bankruptcy
concurrent jurisdiction of suits by a trustee to recover unlawful prefer-
ences, the form of the proceeding in which such matter is determined
depends upon whether or not the property affected is in the custody of
the court. If in the possession of an adverse claimant, a plenary suit
is necessary; but, when in the possession of the court, as where the al-
leged preference was by way of mortgage, and the property has been
sold, and the proceeds deposited in the bankruptcy court, that court
may determine the validity of the mortgage on a petition filed by the
trustee.

2. SAME—FORM OF PROCEEDING—CONSENT.

Where an injunction granted by a court of bankruptcy, restraining the
foreclosure of mortgages on property of a bankrupt estate on the ground
that one of such mortgages constituted an unlawful preference, was dis-
solved on condition that the proceeds of the property applicable to said
mortgage should be paid into a bank, subject to the further order of the
court, the acceptance of such condition by the mortgagee is equivalent
to a consent that the validity of the mortgage should be determined by
the court in any appropriate form of proceeding.

3. SAME—PRESENT CONSIDERATION FOR MORTGAGE—RENEWAL OF PRIOR MORT-
GAGE.

Where a valid mortgage was given as security for a present loan, the
fact that a new mortgage on the same property, given within four months
prior to the mortgagor's bankruptcy, was made to secure a renewal of the
loan, does not render such mortgage voidable as an unlawful preference.

4. SAME—VALIDITY OF MORTGAGE—WITHHOLDING PRIOR MORTGAGES FROM
RECORD.

Under Code Pub. Gen. Laws Md. art. 21, §§ 13–16, which require mort-
gages to be recorded within six months after their execution, where a
succession of mortgages—the first given to secure a loan, and the others
to secure renewals thereof every 45 days thereafter—were withheld from
record during a time exceeding six months for the purpose of upholding
the mortgagor's credit, the last of the series, although recorded, is void
as to creditors and the mortgagor's trustee in bankruptcy.

In Bankruptcy. In the matter of the petition of the trustees
to declare void a mortgage of the Commonwealth Bank on prop-
erty of the bankrupt.

John N. Steele and John Hinkley, for trustees in bankruptcy.
Edgar H. Gans and Robert Biggs, for Commonwealth Bank.

### Statement.

MORRIS, District Judge. Edgar M. Noel, who was in a large
way a building contractor, was adjudged a bankrupt May 26,
1903, upon his voluntary petition. At the time of his application
he owned and was living in a fee-simple dwelling house on Mt.
Royal avenue, in Baltimore City. This property was subject to
two mortgages: One was a mortgage executed by himself and
wife, December 26, 1900, to Nathan Rohr, and duly recorded, for

$3,000. The other was a mortgage to the Commonwealth Bank of Baltimore for $13,000, dated January 23, 1903, and recorded February 5, 1903; that is to say, within four months prior to his adjudication. After the adjudication the Commonwealth Bank acquired by assignment the $3,000 mortgage, and, by virtue of a consent of the mortgagors contained in the mortgage, but without making the trustees parties to the case, and without application for the sanction of the bankrupt court, procured, August 30, 1903, a decree of the circuit court No. 2 of Baltimore City appointing Robert Biggs trustee to foreclose the above-mentioned first mortgage, and advertised the property to be sold on September 11, 1903. The trustees of the bankrupt's estate filed their petition on September 9, 1903, praying an injunction to stop the sale on the ground that the second mortgage of $13,000 was void as a preference; that the property was worth at least $20,000, having been scheduled by the bankrupt as of the value of $25,000; and that a sale under a decree for foreclosure in the state court would hinder and delay the proper administration of the estate of the bankrupt by the trustees. The court in bankruptcy granted the injunction prayed for. The Commonwealth Bank answered the petition, and made a motion to dissolve the injunction. After a hearing of the motion the court passed an order, October 10, 1903, rescinding the injunction, and permitted a foreclosure sale under the decree in the state court upon condition that the court costs and commissions to be allowed by the state court on the $3,000 first mortgage, and all taxes, water rent, and other charges, should be taken out of the proceeds, and that the first mortgage of $3,000 and interest should be paid to the Commonwealth Bank, and the balance should be deposited subject to the order of this court, to abide the determination of this court as to the validity of the second mortgage of $13,000 given to said Commonwealth Bank. Under the sanction of this order the mortgage was foreclosed, and the controversy now to be determined is as to the validity of the said $13,000 mortgage under which the bank claims the balance of the proceeds of sale, which balance has proved to be less than the amount of its claim.

The trustees of the bankrupt's estate, claiming said balance, filed their petition, praying that the $13,000 mortgage be declared void; setting out the following grounds for the relief prayed for: That on October 23, 1901, Noel obtained from the Commonwealth Bank a loan of $13,000, for which he gave his promissory note payable 45 days after date, and as security he and his wife executed a second mortgage to said bank upon the said Mt. Royal avenue property. The said mortgage was not recorded, and the said note was paid December 7, 1901. That on December 14, 1901, he again applied for and obtained a loan for $13,000 from the bank on the security of his interest in the said property, giving his note payable 45 days after date, and again he and his wife gave a mortgage to said bank on said property. That the mortgage, at the request of Noel, was not recorded. That said loan was then renewed every 45 days, maturing on March 8, 1902, on April 25, 1902, on June 8, 1902, on August 22, 1902, on October 25, 1902, and on January 23, 1903, and

on each of said dates a new note and a new mortgage were given to the bank by Noel. That none of said mortgages were recorded, except the last one, dated January 23, 1903, which was recorded by the bank after notice to Noel on February 5, 1903 (within four months prior to Noel's adjudication), and under which the bank now claims. The trustees, in their petition, charge that the loan to Noel made on December 14, 1901, has never been, in fact, repaid, and is the identical loan now claimed by the bank, and attempted to be secured by the mortgage dated January 23, 1903, and recorded February 5, 1903; that the alleged payments of the different notes given in renewal of said loan were fictitious payments, and no money passed from Noel to the bank. They charge in their said petition that at the time the loan was made the bank knew that Noel was largely indebted and was daily incurring new indebtednesses, and that, by withholding from record all of the six successive mortgages given to secure the said loan of $13,000, they gave Noel a fictitious credit, which was a fraud upon all his creditors becoming such after December 14, 1901, and was void as to all such creditors. They further charge that on January 23, 1903, Noel was insolvent, and was so when the mortgage was recorded on February 5, 1903, within four months of the filing of Noel's petition in bankruptcy, and that it is void as an unlawful preference.

The Commonwealth Bank answered the petition of the trustees. It protested that the court was without jurisdiction to hear and determine the issues presented in said petition, in the form presented to the court, and reserved all exceptions it might make to the jurisdiction of the court to hear and determine the same. It asserts that in the dealings between it and Noel as to said loan of $13,000 for 45 days, made on December 14, 1901, Noel stated that it was a temporary loan, and that it would be paid at maturity, and asked that the mortgage should not be recorded; that, each time the note matured, Noel made the same request, and was granted a loan, and the bank took on each transaction a new note and a new mortgage, until finally, on February 5, 1903, the bank notified Noel of its intention to put the mortgage on record, and did so. In its answer the bank avers that it made the loan in absolute good faith, without any reason to believe that Noel was financially embarrassed, but, on the contrary, during the years 1901 and 1902 it had reason to believe that Noel was prosecuting a number of large and profitable contracts, and that said loan was only a temporary accommodation. It asserts that the withholding of the mortgage from record was not with any intent to give Noel a fictitious credit, or to aid him in misleading any person with whom he might have business dealings. The answer asserts that the bank did not know that Noel was insolvent on January 23, 1903, and denies that the taking of the mortgage constitutes a preference, within the meaning of the bankrupt act; that it has not filed any claim or taken part in the bankruptcy proceedings.

The testimony of the witnesses varies but little from the allegations of the pleadings. It appears that Noel in December, 1901, had on

his hands a number of very large building contracts—among them, a contract for the building of the Fifth Regiment Armory, in Baltimore City, at the contract price of about $250,000. He was a customer of the Commonwealth Bank, and had assigned that contract to the bank, so that it was to receive all the payments due to Noel as they were paid, and was to advance him the money required for his current payments in connection with that contract. Finding he needed more money, he applied for this additional loan of $13,000 on the security of a mortgage of his dwelling house; Noel expecting he might need it until he received the final payments on the armory contract, but the bank making no agreement to let him have it longer than the 45 days, at the end of which each note was made payable. With regard to the ultimate recording of the mortgage, it would seem to have resulted from the fact that the bank officers in February, 1903, became convinced that disputes which had arisen with regard to acceptance of the armory, and the complaints about defects in its construction, and the difficulties which Noel was encountering in obtaining the final payments on that contract, would prevent his paying the note at maturity from the source from which he had been expecting the money. They then notified Noel that they would record the mortgage. As to the continuance of the loan, the transaction was that, before the 45-day note matured, Noel would request the bank to continue the loan, and its officers would have a new mortgage prepared, and Noel and his wife would come to the bank and execute it, and he would make a new note. The cashier would then draw his cashier's check for $13,000 to the order of Noel, who would indorse and deposit it to his account, and draw his check on the bank for $13,000, and hand it to the cashier, and would receive back the old note and the old mortgage. The interest was charged up against his account quarterly, together with interest for all the discounts and advances which Noel had from the bank on which interest was payable.

### Jurisdiction.

The first question presented is that raised by the Commonwealth Bank by the reservation in its answer of the right to except specially to the jurisdiction of the court in bankruptcy to hear and determine the issues presented by the petition of the trustees, in the form in which they are presented by said petition to the court. It is urged in argument that the question whether or not the mortgage of January 23, 1903, to the bank, is void, and is to be set aside, can be determined (unless by the consent of the bank) only in an independent plenary suit in equity. And in support of this contention counsel for the bank cite Bardes v. Harwarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, Louisville Trust Co. v. Cominger, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, and other cases. Since the decisions in the cases cited were announced the amendment of February 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], has given to the District Court in bankruptcy a jurisdiction which was expressly denied to it before. Sec-

tion 70e, Bankr. Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452], provides that the trustee may avoid any transfer by the bankrupt which any creditor might have avoided, and may recover the property so transferred; and by the amendment it is enacted that (Act Feb. 5, 1903; c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1903, p. 417]):

"For the purpose of such recovery any court of bankruptcy as hereinbefore defined and any state court which would have had jurisdiction if bankruptcy had not intervened shall have concurrent jurisdiction."

It appears, therefore, that the objection, if sustainable, is of the most technical character. The court has jurisdiction; the dispute between the parties arises in a proceeding in bankruptcy; all the allegations which would characterize a bill in equity are set out in the trustees' petition; all the notice and all the opportunity to answer and to prepare for the trial that the bank could have, it has had; and by its answer it has set up all the defenses it could bring forward under any form of pleading; and by appeal there is the same opportunity to correct any error of law or fact. Dodge v. Norlin (C. C. A.) 133 Fed. 363.

I think the distinction between the controversies arising in bankruptcy which must be determined by plenary independent suits and those which may be heard on summary petition depends upon who has possession of the subject-matter of the controversy. If the bankruptcy court has possession, then, as a rule, the matter may be heard upon petition and answer. If a stranger has possession, and is holding by adverse claim, then an independent plenary suit is in most cases proper. In this case the property was in the possession of the bankrupt, and upon his adjudication his title and possession passed to the trustees. The possession of the trustees could not be disturbed by any form of adverse legal proceedings without the concurrent sanction of the court of bankruptcy. That court, having possession of the property, had jurisdiction, upon notice to those claiming to have liens and incumbrances upon it, to order the property to be sold by the trustees free of all incumbrances, if the court, in its discretion, should determine that such a sale was for the benefit of the unsecured creditors; and after such a sale, having in its control the fund arising from the sale, it would have jurisdiction to determine the conflicting claims of the parties whose liens had been displaced as to the property sold, and transferred to the fund in the court. Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116.

In Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, it was ruled that the power conferred on the courts of bankruptcy by section 2 of the act of July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], to "(7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided," was controlled and limited by the concluding clause, and that the words "herein otherwise provided" referred to section 23 (30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]), defining

the jurisdiction of the United States and state courts, and before the amendment of 1903, by section 23, those courts could take jurisdiction between trustees, as such, and adverse claimants, to the same extent only as though bankruptcy proceedings had not been instituted.

Even before the amendment of 1903, it was held that the bankruptcy courts, after acquiring actual possession of property, or money, did have jurisdiction to determine the validity of liens thereon. In re Kellog, 10 Am. Bankr. Rep. 7–11, 121 Fed. 333, 57 C. C. A. 547.

The first clause of section 23b has been, however, essentially modified by the amendments of February 5, 1903 [U. S. Comp. St. Supp. 1903, p. 413, § 8], to section 67e, by which transfers made by the bankrupt with intent to hinder, delay, or defraud his creditors, within four months, are declared void, and it is made the duty of the trustee to recover and reclaim the same by legal proceedings or otherwise; and for that purpose, by the amendment, jurisdiction is given to any court in bankruptcy. Also by section 70e (32 Stat. 800 [U. S. Comp. St. Supp. p. 417]) the trustee may avoid any transfer which any creditor might have avoided, and may recover the property; and, for the purpose of such recovery, jurisdiction is given to any court of bankruptcy.

But more than that, I think in the present case the bank has consented that the court in bankruptcy is the forum which is to decide the present controversy. After the adjudication, and without the sanction of the court in bankruptcy, the bank proceeded to obtain a decree of the state court for foreclosure of the first mortgage, which it had had assigned to it, and advertised the property for sale under the first mortgage. The trustee filed a petition stating reasons why it was prejudicial to the unsecured creditors to allow that decree to be executed, alleging that the bank's second mortgage was void, and obtained from this court an injunction to stop the sale. Upon the bank's answer to the petition, and upon its motion to dissolve the injunction, the matter came on to be heard. It was apparent that the property ought to be sold for the interest of all, and that the bank's first mortgage was valid; and, because of the bankrupt's wife's right of dower, it was apparent that a sale under the first mortgage would be advantageous. All matters having been considered, the court rescinded the injunction, upon conditions; and those conditions were accepted by the bank, by availing itself of the order of October 10, 1903. By that order the injunction was rescinded, and the bank's counsel was authorized to proceed to sell as trustee under the state court's decree, subject to several conditions, one of which was that "the balance of the proceeds of sale should be deposited in bank in the name of the bankrupt estate of Edgar M. Noel, subject to the further order of this court, * * * without prejudice to the claim of the Commonwealth Bank under an alleged second mortgage for $13,000 held by it, the validity of which is disputed by the trustees in bankruptcy, and which controversy is to be determined hereafter in this court. The question of the costs of these proceedings in

this court is reserved for future order." Subject to the conditions of 'this order, the sale was made; the bank received the amount of its first mortgage; and the balance of the money was deposited in bank in the name of the bankrupt estate of Edgar M. Noel, subject to the order of this court, according to the conditions prescribed. The acceptance of the benefits of this order by the bank was a consent to its terms, which contemplated that the present controversy should be determined in these proceedings in this court. And as the form of proceeding deprives the bank of no substantial right which it could have in any form of suit, I do not think it should be heard to object either to the jurisdiction, or to the present form of procedure.

## Preference.

As to the question of preference under the bankrupt act, it is clear that a present loan on security is not a preference. Act July 1, 1898, c. 541, 30 Stat. 564, § 67d [U. S. Comp. St. 1901, p. 3449]. This loan was originally made on the security of the mortgage, and there never was a time in all the transactions when Noel had the money without the bank having in hand the mortgage as security. The loan, from its inception, was always secured by the execution of the mortgage, and was always intended to be. If a loan is made upon security, it is not forbidden in good faith to substitute a new security for the old one. Sawyer v. Turpin, 91 U. S. 120, 23 L. Ed. 235; Stewart v. Platt, 101 U. S. 742, 25 L. Ed. 816; Bernhisel v. Firman, 22 Wall. 170, 22 L. Ed. 766; In re Shepherd, 6 Am. Bankr. Rep. 725, note. So, in this case, whether, as contended by the trustees, the transaction is treated as being one loan renewed every 45 days, or, as contended by the bank, as a fresh loan every time a new note was given, the result is the same. It was intended that security should be given with the first loan, and at every interval of 45 days it was intended that there should be a substituted security.

The Maryland Code provides that a deed or mortgage shall be recorded within six months from its date. This final mortgage was recorded within one month after its date. It would seem that the contention that the mortgage was an unlawful preference is not sustained, provided the mortgage which was surrendered on January 23, 1903, in exchange for the new mortgage executed and delivered on that date was a valid security.

## Is the Mortgage Void?

The contention that, by keeping the several mortgages given from time to time from record, the bankrupt intended to hinder, delay, and defraud his creditors, and that the mortgagee acquiesced in that intention, and that therefore the mortgage is void, under section 67e, or under the state law, requires careful examination. When Noel first applied for the loan he was a contractor in fair standing, but with a great deal of building work on his hands. He was the contractor for erecting, among other buildings, the banking house of the International Trust Company, the Fifth Regiment

Armory, a clubhouse for the Baltimore Athletic Club, some warehouses, a hotel in Jacksonville, Fla., and had a large interest in contracts for the Naval Academy buildings at Annapolis, Md.; and there was a sum of about $33,000 due him for constructing the Mt. Holly Inn, which was in jeopardy, and was subsequently lost. He was obviously financially in deep water, but continued on in business until April, 1903, when he was obliged to call a meeting of his creditors, and asked an extension. No satisfactory arrangement being devised, he made his application in bankruptcy May 26, 1903. He scheduled his assets at $310,115.87, and his liabilities at $345,374.19, but his assets have proved illusive. They consisted in a great part of balances which he considered to be due him on his various contracts, but which have proved not collectible, and his convertible assets were all pledged for loans—very largely to the Commonwealth Bank. His schedule of unsecured debts amounts to $137,954.04, and the trustees have in over a year and a half not been able to collect enough to pay a dividend of 5 per cent. on this indebtedness. The fact is that from December, 1901, to January, 1903, he was contracting debts to very considerable amounts, and getting deeper into financial difficulties, and, though hopeful, he was really getting nearer to the crisis when he could raise no more money, and must fail in his building contracts and go into bankruptcy.

Whether or not the unrecorded mortgages which during the period of over a year he was executing every 45 days, and which were intended to be an undisclosed incumbrance on his real estate, is a valid security, or is to be considered invalid, as hindering and delaying creditors, is to be determined by the state law, irrespective of the question of preference under the bankrupt act. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457. The question is whether a mortgage kept off the record, as this one was, is valid under the Maryland decisions. The object of the recording of conveyances is to prevent the hardship resulting to creditors and purchasers from the existence of secret conveyances, not disclosed by the public records, of property of which the grantor remains the ostensible owner. The reasonable time of six months is provided within which a mortgagee must record his mortgage in Maryland, to be of any avail whatever. Obviously the purpose of the law requiring the recording of mortgages is defeated if, by a contrivance such as was resorted to in this case, a mortgage can be kept in existence, and remain a secret incumbrance, and be ready to be made effective at any moment when a crisis in the affairs of the mortgagor arises. By such a scheme the plain intention of the Legislature is outwitted.

In the leading case of Gill v. Griffith, 2 Md. Ch. 270, the opinion of the chancellor, which was adopted by the Court of Appeals of Maryland, decided that a similar device with regard to a bill of sale of chattel property was void. The reason given in Gill v. Griffith for keeping the bill of sale off the record and renewing it every 19 days was to spare the mortgagor, who was a professional man, the mortification resulting from the community knowing that he

had been obliged to mortgage his household effects. The reason in the present case is stated by both Noel and the bank to have been, and no doubt was, to prevent the injury to the financial credit of a man largely engaged in business, and badly needing credit, which would result if a mortgage upon his dwelling house was put upon record, and thus became known to those with whom he did business. What was said by the chancellor in the case of Gill v. Griffith is equally applicable to this case:

"There was a fixed design, persevered in for more than twelve months, to prevent actual or constructive notice from being communicated to the public of the existence of this deed. Whatever may have been the cause of this— whether the result of an agreement, promise, or mere acquiescence in the expressed request of the mortgagor, and to save his feelings from mortification—it is so clearly repugnant to the letter and policy of the Legislature that it seems to me impossible it can escape condemnation."

See, also, Edelhoff v. Horner-Miller Mfg. Co., 86 Md. 595–607, 39 Atl. 314.

In Blennerhassett v. Sherman, 105 U. S. 100, 119, 121, 26 L. Ed. 1080, Gill v. Griffith and other similar decisions are approved. In the recent case of Thompson v. Fairbanks, 196 U. S. 516-521, 25 Sup. Ct. 306, 49 L. Ed. ——, it was held that whether a chattel mortgage which includes after-acquired property is valid is a local and not a federal question, as to which the decision of the state court controls. The courts of Vermont having held such mortgages valid, and that the taking possession under such a mortgage of the after-acquired property related back to the date of the mortgage, the Supreme Court of the United States sustained the lien of the mortgagee as to the after-acquired property upon the ground it was the enforcement of a lien held valid by the state decisions, and provided for in a mortgage executed and recorded years before the act of bankruptcy. This was possible because the mortgage had been recorded immediately after its execution, and was notice to all the world of the existence of the lien, and that the mortgagee had the right to take possession of property subsequently acquired as provided for in the mortgage. The Supreme Court said—page 521 of 196 U. S., page 308 of 25 Sup. Ct. (49 L. Ed. ——) :

"The bankrupt was therefore not holding himself out as unconditional owner of the property, and there was no securing of credit by reason of his apparent unconditional ownership. The record gave notice that he was not such unconditional owner. There was no secret lien, and if defendant cannot secure the benefit of this mortgage which he obtained in 1891, as a lien on after-acquired property, * * * it must be because of some provisions of the bankruptcy law, which we think the court ought not to construe or endeavor to enforce beyond its fair meaning."

This decision, favorable to the mortgagee, turned upon two points: First, that such a mortgage of after-acquired property had been held valid by the state court; and, second, that notice of its existence had been given by its having been promptly recorded.

The opinion of the Supreme Court in Sawyer v. Turpin, 91 U. S. 118, 23 L. Ed. 235, proceeds upon the ground that the bill of sale

upheld in that case was valid under the Massachusetts law, even if there was an agreement not to record it. Under the Maryland decision, a secret mortgage kept off the record by repeated renewals for over six months is held to be invalid as to creditors.

By the provisions of Bankr. Act July 1, 1898, c. 541, § 70e, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered, or its value collected from whoever may have received it, except a bona fide holder for value."

By section 1 (25) "transfer" is defined as including "the sale and every other different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security."

The policy of requiring notice to creditors by recording is most fully recognized in the present bankrupt act. By section 3b, a petition may be filed against an insolvent within four months after the act of bankruptcy, and it is enacted that "such time shall not expire until four months after the date of recording or registering the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay and defraud his creditors," etc., or from the date when the beneficiary takes notorious, exclusive, or continuous possession. Section 60 provides that, where the preference consists of a transfer, such period of four months shall not expire until four months after the date of recording or registering the transfer, if by law such recording. or registering is required.

Section 67d provides:

"Liens given or accepted in good faith and not in contemplation or in fraud upon this act and for a present consideration, which have been recorded according to law, if record thereof was necessary to impart notice, shall not be affected by this act."

In Stewart v. Platt, 101 U. S. 731, 739, 25 L. Ed. 816, relied upon by counsel for the bank, it was held that although the bill of sale was invalid for want of proper record, as against creditors who had obtained judgments and levied executions before the application in bankruptcy, it was good as against the assignee in bankruptcy, because it would have been good against the bankrupts themselves, and that the assignee, representing only general creditors, could not dispute the claim of the mortgagee, which the mortgagors themselves could not have disputed. This decision was made under the bankrupt act of 1867. By that act, while there passed to the assignee "all property conveyed by the bankrupt in fraud of his creditors," it did not contain the provision of section 70d of the act of 1898, that the trustee may avoid any transfer which any creditor might have avoided, and (section 67e) that it shall pass to the trustee as assets of the bankrupt's estate, without its being required that any creditors should have been in a position to attack the transfer by reason of having a judgment and ex-

ecution. Sheldon v. Parker, 11 Am. Bankr. Rep. 152; Mueller v. Bruss (Wis.) 8 Am. Bankr. Rep. 442–445, 88 N. W. 229; Beasley v. Coggins (Fla.) 12 Am. Bankr. Rep. 355, 37 South. 213; Chesapeake Shoe Co. v. Seldner, 10 Am. Bankr. Rep. 466, 122 Fed. 593, 58 C. C. A. 261.

The proof is convincing that a large part of the unsecured indebtedness of over $137,000 was contracted after December 14, 1901, the date of the first of the series of unrecorded mortgages. The claims are in great part for work and material and structural steel and iron work which went into the buildings in process of construction by Noel between that date and the date of the last mortgage of the series, and the credits were given and debts contracted during the existence of this secret lien on Noel's property. The conclusion is not to be resisted that during all that period Noel was in fact insolvent, and constantly getting more deeply so. The successive mortgages were during all this time in the possession of the bank, and its act in keeping them alive by successive renewals, so as to be within the time limited for recording, and yet keeping them off the record, was an act in contravention of the law, and done by it to the injury of other creditors; for its natural effect was to delude them as to Noel's real financial condition.

## Conclusion.

I am constrained to hold, for the reasons stated, that the scheme by which the mortgage originally given December 14, 1901, was kept off the record until February 5, 1903—far beyond the six months limited by the Maryland Code of Public General Laws (article 21, §§ 13, 14, 15, 16)—in pursuance of the understanding between Noel and the bank that it should be kept unrecorded for the express purpose of upholding Noel's credit by concealing its existence from persons dealing with him, renders the mortgage void as to creditors and as to the trustees in bankruptcy.

A decree will be entered to that effect.