MILLIKIN v. SECOND NAT. BANK OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit.   May 21, 1913.)

No. 1,155.

BANKRUPTCY (§ 184*)—LIENS—CHATTEL MORTGAGE—VALIDITY—RECORD.

Code Pub. Gen. Laws Md. 1904, art. 21, § 41, provides that no personal property, whereof the vendor, mortgagor, or donor shall remain in possession, shall pass to any mortgagee, unless by mortgage acknowledged and recorded as subsequently required.   Sections 45 and 46 require bills of sale and chattel mortgages to be recorded in the county where the mortgagor resides within 20 days from the date thereof, and section 48 provides that chattel mortgages shall be valid and take effect except as between the parties only from the time of recording.   *Held* under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), as amended by Act Cong. June 25, 1910, c. 412, 36 Stat. 838 (U. S. Comp. St. Supp. 1911, p. 1490), giving to the bankrupt's trustee the rights of a creditor holding a lien by legal or equitable proceedings, that a chattel mortgage on a vessel not documented, which was not recorded as required by state statute, was invalid to confer a lien on the mortgagee as against the mortgagor's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

In the matter of bankruptcy proceedings of John H. Riehl.   Claim by the Second National Bank of Baltimore against C. Howard Millikin, trustee, for the proceeds of the sale of a derrick hoister vessel, under an unrecorded chattel mortgage.   From an order allowing the bank's claim of lien (200 Fed. 455), the trustee appeals.   Reversed.

G. W. S. Musgrave, of Baltimore, Md., for appellant.

William H. Hudgins, of Baltimore, Md., for appellee.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

PRITCHARD, Circuit Judge.   This was a suit in bankruptcy instituted in the District Court of the United States for the District of Maryland.   The facts are as follows:

On February 29, 1912, John H. Riehl, a resident of Baltimore, Md., was adjudicated a bankrupt upon his voluntary petition.   At the time of his adjudication he was in possession of certain vessel property used by him in his business, of some of which he was sole owner and of others co-owner.   One of the vessels of which he was the sole owner was a derrick hoister named "Calvin."   On August 17, 1911, the said John H. Riehl made and executed to the Second National Bank of Baltimore, to secure an indebtedness of $14,000, a mortgage on all of the said vessel property, including the derrick hoister Calvin.   This mortgage was recorded in the customhouse at Baltimore where all of the vessels were registered and enrolled, except the derrick hoister Calvin, which was also specifically mentioned in said mortgage as "not documented."   The said mortgage was never recorded in the record of-

fice of the superior court of Baltimore city. The said vessel property was sold under order of the District Court of the United States for the District of Maryland, and the said derrick hoister Calvin brought the sum of $1,600, which amount of money, less its proportionate share of the expenses of sale, is now in controversy.

The Second National Bank of Baltimore filed its claim, and the trustee excepted thereto in so far as it affected the derrick hoister Calvin and the fund representing the same, which exceptions were sustained by the referee, and said claim disallowed as a preferred claim to that extent. Upon a petition for review, the District Court reversed the finding of the referee, and the matter is brought before this court by appeal from this decision. The learned judge who tried this case in the court below in referring to the law of Maryland said:

"The law of Maryland is that, as previously existing creditors are not hurt by the withholding of a mortgage from the record, the fact that it is not recorded gives them no other or better right than they would have had had it been recorded."

In other words, the court held that the bank's mortgage constituted an equitable lien, and as such had priority over debts contracted prior to its execution.

The real question involved in this controversy has not as yet been passed upon by the Court of Appeals of Maryland, but it is insisted by counsel for appellee that in the case of Textor v. Orr, 86 Md. 392, 38 Atl. 939 (a case wherein the facts are different from the case at bar), that court rendered a decision, the effect of which is to sustain the ruling of the lower court. In that case a trustee for the benefit of creditors under a deed of assignment executed according to the laws of Maryland instituted a suit to recover certain personal property which was held by virtue of an unregistered paper in the nature of a chattel mortgage. There was no levy of an execution or attachment upon the property; the only claim upon which the trustee based his right being the deed of assignment. It was held that the agreement or chattel mortgage was not effective as a bill of sale or chattel mortgage as against third parties, and was not valid or enforceable against a bona fide purchaser or mortgagee without notice, because it was not acknowledged and recorded as required by the Code in cases where the mortgagor or seller of chattels remains in possession of the same, yet the unregistered mortgage or bill of sale constituted an equitable mortgage or lien, and as such was enforceable not only against the mortgagor himself, but also against parties who claimed under him as volunteers or without an equity superior to that of the creditor holding the lien, and that the assignee was such a party. In other words, he was not a purchaser for value, and that he could not assert any claim against the property which the assignor could not.

Thus it will be seen that the case was disposed of upon the theory that the assignee held no lien by judgment or otherwise that was superior to the equitable lien. The question before us was not passed upon in that case. The court below, in referring to this phase of the question, said:

"It may be that the courts of Maryland, when the question shall come squarely before them, may hold that other and more serious consequences

would follow from the absence of an affidavit than they have held will result from a mere failure to record a mortgage or deed of trust, or they may not. It is not necessary to consider that question in this case."

This question not having been determined by the Court of Appeals of Maryland, it devolves upon this court to determine the same in the light of the bankruptcy law and the general rule applicable to such cases. It is conceded that the Calvin was on the same footing as other personal property, subject to all the laws applicable thereto inasmuch as it had not been documented in the custom house. Therefore, the question for us to decide is as to whether the mortgage in question not having been recorded in accordance with the requirements of the laws of Maryland relating to bills of sale and mortgages of personal property has priority over the claims of the general creditors of the bankrupt as to the funds in controversy.

Prior to the enactment of the amendment of June 25, 1910, a trustee in bankruptcy in so far as the rights of the bankrupt were concerned stood in the shoes of the bankrupt, and the property taken by him was subject to the enforcement of any rights or equities that could have been enforced between the parties at the time of the adjudication, and at that time the principles contended for by counsel for appellee would have applied to a case like the one at bar. In other words, an unregistered mortgage being good inter partes could have been enforced as such, but the act as amended completely changed the situation, and now the trustee is the representative of all the creditors, thus accomplishing what the law intended, to wit, to cut up by the roots all secret liens or other agreements between the parties. Under the old law a general creditor was not permitted to contest such transactions, and as a result was deprived of the right to share in an equal distribution of the assets of the bankrupt.

Under the present law (section 47, subd. 2) a trustee occupies the same position as a judgment creditor with an execution in his hands at the time of the adjudication; the amendment in question being in the following language:

"* * * And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

The Bankruptcy Act was intended to secure an equal and equitable distribution of the assets of the bankrupt among all creditors, and, keeping this in mind, we will now consider the question: Did the appellee acquire a lien on the property in question so as to entitle him to priority over the general creditors?

The law of Maryland relating to registration of bills of sale and chattel mortgages is to be found in article 21 of the Public General Code of the Laws of Maryland, and the pertinent sections are as follows:

"Sec. 41. No personal property, of any description whatever, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or

change, or any property therein be transferred to any purchaser, mortgagee or donee, unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto."

"Sec. 43. A bill of sale or chattel mortgage, if acknowledged within this state, may be acknowledged before any officer authorized to take acknowledgments of deeds within this state in the same manner as deeds are acknowledged, or acknowledged as certified."

"Sec. 45. Bills of sale shall be recorded in the county or city where the vendor or donor resides within twenty days from the date thereof. If the vendor or donor resides out of the state, and the personal property conveyed by such bill of sale, is located in this state, then such bill of sale shall be recorded in the county where such property is located, or in Baltimore city, if it be located in said city, within twenty days from the date of such bill of sale.

"Sec. 46. A mortgage of personal property shall be executed, acknowledged and recorded as bills of sale."

"Sec. 48. Mortgages of personal property shall be valid and take effect, except as between the parties thereto, only from the time of recording; and in case of more than one mortgage, the one first recorded shall have preference."

It appears that the Legislature of Maryland has from time to time changed the law in regard to the registration of deeds of conveyances of real estate, but it has never changed the law in regard to the registration of bills of sale, mortgages and gifts of goods and chattels where the vendor, mortgagor, or donor remains in possession.

In the case of Gill v. Griffith, 2 Md. Ch. 271, we are told:

"Though the Legislature has changed the law with regard to the registration of deeds or conveyances of real estate, * * * it has never, in any respect, modified the act of 1729, to prevent secret sales, mortgages, and gifts of goods and chattels, of which the vendor, mortgagor, or donor, should remain in possession, but these have continued exposed to the stern, but wholesome provisions of that act."

Section 45 of article 21 requires bills of sale to be recorded in the county or city wherein the vendor or donor resides within twenty days from the date thereof, and, if the vendor or donor resides out of the state and the personal property conveyed by such bill of sale is located in the state, then such bill of sale shall be recorded in the county where such property is located, or in Baltimore city, if it be located in that city within 20 days from the date of such bill of sale, and by section 46 it is provided that a mortgage of personal property shall be executed, acknowledged, and recorded in the same manner as bills of sale, and section 48 provides that mortgages of personal property shall be valid and take effect, except as between the parties thereto, only from the time of recording.

Thus it will be seen that the provisions of the law clearly require that mortgages of personal property shall be recorded within 20 days from the date thereof, and it is apparent that the real purpose of the statute is to prevent one from disposing of his property by mortgage, bill of sale, or other secret conveyances. This requirement renders it impossible for one to execute a secret lien and thereafter deal with the public as though nothing had transpired to lessen or impair his financial ability.

206 F.—2

In other words, the statute provides that, where one desires, to execute a mortgage, he may do so, and that the same shall be good as between the mortgagor and mortgagee, but, if such mortgage be not registered, the mortgagor cannot by the execution of the same defeat the rights of other creditors who may thereafter acquire liens upon such property.

The case of Pleasonton v. Johnson, 91 Md. 673, 47 Atl. 1025, is pertinent to the case at bar. In that case there was a failure on the part of the mortgagee to make the affidavit in pursuance to the requirements of section 50 of article 21 of the Code of Maryland, and therefore it was held that the mortgage was invalid, notwithstanding the fact it had been recorded. The court in that instance was of the opinion that the requirements of this section were mandatory.

If the failure to comply with this requirement renders a mortgage invalid, does it not necessarily follow that a failure to comply with the requirements of the section relating to recordation of mortgages would render such instrument invalid? The requirements contained in section 48 in regard to the conveyances and mortgages of personal property are as plain and positive as those contained in section 50, which require a mortgagee to make an affidavit as to the bona fides of the transaction. It is the purpose of registration to give notice to the world of the fact that the conveyance in question has been made. The requirement that the mortgagee should make an affidavit as to the nature of the transaction was to prevent fraud and to secure fair dealings, and no doubt serves a good purpose.

The provision that a mortgage shall be registered in order to pass title as against judgment creditors or purchasers for value is equally important; and, if the laws of Maryland are to be so construed that one with a secret lien can defeat the rights of a judgment creditor with an execution in his hand, then the requirements relating thereto are wholly ineffective and amount to nothing.

"A mortgage does not become a valid lien against creditors of the mortgagor until it is recorded. That the mortgage is given for the purchase money of the mortgaged property does not relieve the mortgagee from the necessity of recording it before other liens attach. Thus, if there be an execution in the hands of a sheriff at the time of the debtor's purchase of the property, so that the lien of the execution would attach to the property upon the delivery of it to the debtor, and he gives a chattel mortgage for the purchase money at the time of the purchase, but the mortgagee neglects for twenty hours to record it, the execution becomes a prior lien. It is not necessary, for a creditor attaching (attacking) an unrecorded mortgage to show that he intended credit on the faith of the property covered by the mortgage. If the mortgage has not been recorded, it is not a valid lien against the creditor, even though his claim accrued before the giving of the mortgage." Jones on Chattel Mortgages (5th Ed.) § 263.

In the case of Sidener v. Bible, 43 Ind. 234, the Supreme Court of that state passed upon a statute containing provisions similar to that of the Maryland statute, and in referring to the same said:

"The mortgage was not legally recorded, as may be seen by referring to the statute on the subject, which provides that 'no assignment of goods by way of mortgage shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged;

as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides within ten days after the execution thereof.' "

The court in that instance held that a failure to record the mortgage in pursuance to the statute of that state rendered the mortgage invalid against all parties other than the parties thereto, and in discussing this phase of the question said:

"It is claimed that the mere existence of creditors, if they have acquired no lien upon the property, does not prevent the owner from making a bona fide conveyance of it, and that the mortgage in this case being valid between the parties, and the mortgagee having obtained possession of the mortgaged property under the mortgage, before appellant acquired any lien thereon it can make no difference whether the mortgage was ever recorded or not."

In the case of In re Noel (D. C.) 137 Fed. 694, Morris, District Judge, in passing upon this phase of the question, said:

"Whether or not the unrecorded mortgages which during the period of over a year he was executing every 45 days, and which were intended to be an undisclosed incumbrance on his real estate, is a valid security, or is to be considered invalid, as hindering and delaying creditors, is to be determined by the state law, irrespective of the question of preference under the Bankruptcy Act. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457. The question is whether a mortgage kept off the record, as this one was, is valid under the Maryland decisions. The object of the recording of conveyances is to prevent the hardship resulting to creditors and purchasers from the existence of secret conveyances, not disclosed by the public records, of property of which the grantor remains the ostensible owner. The reasonable time of six months is provided within which a mortgagee must record his mortgage in Maryland, to be of any avail whatever. Obviously the purpose of the law requiring the recording of mortgages is defeated if, by a contrivance such as was resorted to in this case, a mortgage can be kept in existence, and remain a secret incumbrance, and be ready to be made effective at any moment when a crisis in the affairs of the mortgagor arises. By such a scheme the plain intention of the Legislature is outwitted.

"In the leading case of Gill v. Griffith, 2 Md. Ch. 270, the opinion of the chancellor, which was adopted by the Court of Appeals of Maryland, decided that a similar device with regard to a bill of sale of chattel property was void. The reason given in Gill v. Griffith for keeping the bill of sale off the record and renewing it every 19 days was to spare the mortgagor, who was a professional man, the mortification resulting from the community knowing that he had been obliged to mortgage his household effects. The reason in the present case is stated by both Noel and the bank to have been, and no doubt was, to prevent the injury to the financial credit of a man largely engaged in business, and badly needing credit, which would result if a mortgage upon his dwelling house was put upon record, and thus became known to those with whom he did business. What was said by the Chancellor in the case of Gill v. Griffith is equally applicable to this case: 'There was a fixed design, persevered in for more than twelve months, to prevent actual or constructive notice from being communicated to the public of the existence of this deed. Whatever may have been the cause of this—whether the result of an agreement, promise, or mere acquiescence in the expressed request of the mortgagor, and to save his feelings from mortification—it is so clearly repugnant to the letter and policy of the Legislature that it seems to me impossible it can escape condemnation.' "

: The case of In re Noel, supra, was brought to this court on appeal, and the judgment of the lower court was affirmed on the 12th day of March, 1907.

The Maryland cases seem to have no bearing upon the situation as presented in the administration of the Bankruptcy Act of 1898, as amended June 25, 1910. Under that act a mortgage for a pre-existing indebtedness made by a mortgagor when insolvent and duly recorded would be an act of bankruptcy, because working a preference, and would (by the recordation) give notice to all other creditors of the facts and enable them to file a petition against the debtor within four months and avoid the preference.

If, however, the mortgage be unrecorded, it would afford no notice to the creditors, and they would not be in a position to file a petition. Is it to be said that they are to be placed in a worse position as to the assertion of their rights in respect to an insolvent estate than if all the formalities attendant upon the attempt to create the purpose had been complied with?

While it is true that in this instance it is not insisted that a fraud upon the rights of other creditors was intended by the failure to record the mortgage in question, yet, if it should be held that an unregistered deed was valid and passed title to the property sought to be conveyed as against creditors with a superior lien, it would encourage fraudulent transactions, and thereby practically nullify the bankruptcy law as respects the making of mortgages by insolvent debtors.

We have carefully considered the various cases relied upon by appellee, and are of the opinion that they do not apply to the case at bar.

In view of what we have said, we are impelled to the conclusion that the court below erred in holding that the mortgage of the bank was entitled to priority over the other creditors.

For the reasons stated, the decree of the lower court is reversed. Reversed.